UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

H/N PLANNING & CONTROL, INC., et al.,    )
                                          )
            Plaintiff(s),                 )
                                          )
    vs.                                   )        Case No. 4:04CV01099-ERW
                                          )
CITY OF ST. PETERS, MISSOURI, et al.,     )
                                          )
            Defendant(s).                 )


**AMENDED MEMORANDUM AND ORDER[1]**

This matter comes before the Court on Plaintiffs' Motion for New Trial and to Alter or

Amend the Judgment [doc. #213] and Defendants' Joint Motion for Judgment as a Matter of Law

After Trial or in the alternative a New Trial [doc. #216].

## I. PROCEDURAL HISTORY

Plaintiffs Brian and Karla Hodak filed suit on August 19, 2004, against Defendants City of

St. Peters, Tom Brown, Timothy Kaiser, Robert Treadway, and Charles Carson, alleging seven

counts, each seeking relief under 42 U.S.C. § 1983.  The Complaint was amended by Plaintiffs'

motion on September 13, 2005, to remove the claims of conspiracy against all Defendants under

Count I, and to remove the claim of a violation of Plaintiffs' First Amendment rights against

Timothy Kaiser, Robert Treadway, and Charles Carson (collectively "the Police Defendants").

Summary Judgment was granted to Defendants on Counts II, IV, and V, leaving three counts

remaining for trial.  The counts remaining were: Count I, First Amendment violation against

---

[1]This Order changes all references to Compensatory Damages from $350,000.00 to
$375,000.00, in accordance with the Jury verdict entered on November 14, 2006.  This order is
further amended to address Plaintiffs' Motion to File a Fourth Amended Complaint [doc. #228].

1

Defendants Brown and the City of St. Peters; Count III, claim against the Police Defendants for excessive use of force; and Count VI, claim against the Police Defendants for failing to intercede on Plaintiff Brian Hodak's behalf and prevent the excessive use of force, false arrest and malicious prosecution.

The three remaining counts went to trial, which began on March 6, 2006. The trial resulted in a jury verdict for the Plaintiff on Count I, and jury verdicts for the Police Defendants on Counts III and VI. Prior to the judgment being rendered, the Defendants moved for judgment as a matter of law at the close of all the evidence, arguing that Plaintiffs Brian and Karla Hodak had not presented any evidence of damages resulting from Defendants Brown and the City of St. Peters' retaliation against Plaintiff Brian Hodak for exercising his first amendment rights. Rather, the Defendants argued that all evidence of damages was to H/N Planning and Control, Inc. ("H/N Planning"). Plaintiffs then orally moved the Court to add H/N Planning as a Plaintiff in the case. The Court granted Plaintiffs' Motion, and Denied Defendants' Motion. Plaintiffs filed a Second Amended Complaint on March 17, 2006, to conform with the oral motion made at the close of all the evidence at trial. Defendants subsequently filed a Joint Motion for Judgment as a Matter of Law or in the Alternative a New Trial. This Court denied Defendants' Motion for Judgment as a Matter of Law, but granted their Motion for a New Trial, setting for a new trial Count I only of Plaintiffs' Second Amended Complaint. On August 23, 2006, this Court granted Plaintiffs leave to file a Third Amended Complaint, which clarified Count I, as alleging damages to both Plaintiff Brian Hodak and Plaintiff H/N Planning. The case was retried on November 6, 2006, and the Jury returned a verdict in favor of the Plaintiffs, against Defendants Brown and the City of St. Peters. The verdicts were in favor of both Plaintiff Brian Hodak, and Plaintiff H/N Planning, however all damages awarded were those sustained by Plaintiff H/N Planning. The Jury awarded

$375,000.00 to Plaintiff H/N Planning in compensatory damages, and awarded $1,000,000.00 in punitive damages.

Plaintiffs now assert that this Court should amend the judgment, or in the alternative that a new trial is warranted as to damages only, because the jury instructions mandated that if the Jury found liability in favor of Plaintiff Brian Hodak they were required to also award compensatory damages. Plaintiff also seeks pre-judgment interest on the $375,000.00 compensatory damage award. This motion is currently pending before the Court. Also pending before the Court is Defendants' Motion for Judgment as a Matter of Law After Trial or in the alternative New Trial or Amendment of the Judgment. The Court will address both pending motions.

## II. BACKGROUND FACTS[2]

Plaintiff Brian Hodak and his wife Karla Hodak operated C. Blake's Bar and Grill ("the Bar"), which was owned by Plaintiff H/N Planning, a corporation of which Karla Hodak is the sole shareholder. Plaintiff Brian Hodak wrote a number of letters to the editor, that were published in a local newspaper, and which were critical of Mayor Brown and some of his decisions. Following these actions Plaintiffs asserted that Defendant Mayor Brown and the City of St. Peters retaliated against him by increasing the police presence in front of the Bar, and by eventually revoking Karla Hodak's liquor license. The revocation of Karla Hodak's liquor license forced Karla Hodak to sell the Bar. The increase in Police presence and the revocation of the liquor license resulted in losses to the Bar which Plaintiffs seek to recover.

---

[2]This brief recitation of the facts is not intended to be exhaustive. The transcript of the trial in this matter fully sets forth the evidence that was presented at trial, and the verdicts submitted by the Jury. This brief statement is intended only for ease in reading the remainder of the order.

# III. PLAINTIFFS' MOTION FOR NEW TRIAL OR TO ALTER OR AMEND JUDGMENT

## A. LEGAL STANDARD

A motion for a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). "A district court may grant a new trial on the basis that the verdict is against the weight of evidence, if failing to do so would result in a miscarriage of justice." *Harris v. Secretary, U.S. Dep't of the Army*, 119 F.3d 1313, 1318 (8th Cir. 1997). A new trial is warranted if the court concludes "that the jury quite clearly reached a seriously erroneous result in spite of the clear weight of evidence." *Leichihman v. Pickwick Intern.*, 814 F.2d 1263, 1267 (8th Cir. 1987) (internal quotation omitted). In making this determination, a court can rely on its own reading of the evidence and is permitted to weigh the evidence. *Harris*, 119 F.3d at 1318. The Eighth Circuit has cautioned, however, that a court "may not reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id.* (internal quotations omitted).

Rule 59 also provides that a party may file a motion to alter or amend the judgment. Fed. R. Civ. P. 59(e). Both of these motions are subject to a ten day time limitation. "The Rule was adopted to 'make clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450 (1982) (citing *Notes of Advisory committee on 1946 Amendment to Rules*, 5 F.R.D. 433, 476 (1946)). "Any motion for a new trial shall be filed no later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(b). The same time limit is applicable to a motion under Rule 59(e) to alter or amend a judgment. Fed. R. Civ. P. 59(e).

## B. DISCUSSION[3]

Plaintiffs have requested: a new trial on damages only on Count I of the Third Amended Complaint with respect to Plaintiff Brian Hodak, or in the alternative to enter a judgment of $1.00 nominal damages, assessment of prejudgment interest on the economic damage award of $375,000.00, and an order rescinding and expunging the revocation of the liquor license of Karla Hodak, on behalf of Plaintiff H/N Planning. *Pl. Mot. for New Trial and to Alter or Amend the Judgment*, ¶2-4. Defendants dispute that any amendment of the judgment is necessary, and further argue that there was no error in the jury instructions, nor in the verdict, so as to warrant a new trial as to damages, in the manner requested by Plaintiffs.[4]

### 1. New Trial on Damages

Plaintiffs' first argument is that Plaintiff Brian Hodak is entitled to a new trial on the question of damages because the Jury returned an inconsistent verdict. Plaintiffs assert that it was inconsistent to find in Plaintiff Brian Hodak's favor but not award damages. Defendants disagree that there is any inconsistency, as the jury simply assessed Plaintiff Brian Hodak's damages as zero. Jury Instruction Number 10 stated:

> If you find in favor of Plaintiff Brian Hodak under Instruction No. 6 and Instruction No. 8, then you must award Plaintiff Brian Hodak such sum as you find by the greater weight of the evidence will fairly and justly compensate Plaintiff Brian Hodak for any mental and emotional distress as a direct result of the retaliation you find occurred as a result of Defendants' conduct.

---

[3]As an initial matter, the Court notes that Plaintiffs filed the pending motion for a new trial on November 27, 2006. The final Judgment was entered in this case on November 14, 2006. According to the Federal Rule 6(a), the motion had to be filed by November 29, 2006. Plaintiffs' Motion is therefore timely. The Court will now turn to the merits of Plaintiffs' motion.

[4]Defendants have also filed a Motion for a New Trial and a Motion for Judgment as a Matter of Law which challenge the adequacy of the jury instructions, these arguments will be addressed later in the opinion.

Jury Instruction No. 10. On Verdict Form A, the jury found in favor of Plaintiff Brian Hodak against both Defendants, but awarded no dollar amount in damages.

The Court concludes that there was no error in the Jury's verdict on damages. The Court may grant a new trial if the verdict is against the weight of the evidence, or if the verdict is inconsistent. The Court may grant a new trial on the basis that the verdict is against the weight of the evidence only if failing to do so would result in a miscarriage of justice. *See Harris v. Secretary, U.S. Dept. Of the Army*, 119 F.3d 1313, 1318 (1997) ("A district court may grant a new trial on the basis that the verdict is against the weight of the evidence, if failing to do so would result in a miscarriage of justice."). The Court does not believe that the Jury's verdict was against the weight of the evidence, nor does it believe that the verdict creates an inconsistency that cannot be reconciled.

Plaintiffs cite to numerous cases for the broad proposition that uncontested evidence of damages mandates an award of compensatory damages. For example, Plaintiffs cite to the case of *Westcott v. Crinklaw* for the proposition that where plaintiff's injuries are undisputed and liability is found against the defendants, and yet no damages are awarded, then a new trial should be ordered. *Pl. Memo. in Support of Pl. Mot. for New Trial*, p.3 (citing *Westcott v. Crinklaw*, 133 F.3d 658 (8th Cir. 1998). However, that case does not stand for this general rule. *See also Haywood v. Koehler*, 78 F.3d 101, 104 (2nd Cir. 1996) ("Haywood [plaintiff] contends initially that the jury's finding that Garcia used excessive force on Haywood necessarily entitles him to an award of some compensatory damages. Stated that broadly, however his position is untenable, since we have ruled that a finding of excessive force does not, as a matter of law, entitle the victim to an award of compensatory damages."). To the contrary, *Westcott* specifically states that "there are three situations in which a jury may reasonably conclude that compensatory

damages are inappropriate despite a finding that excessive force was used." *Id.* at 661. Furthermore, the standards articulated by the Eighth Circuit in that case are not applicable to all cases involving a constitutional violation, but rather all cases cited by Plaintiff are in reference to use of excessive force. *See also Wheatley v. Beetar*, 637 F.2d 863, 865 (2nd Cir. 1980). This is not an excessive use of force case, and even if it were the rule presented by Plaintiffs is overly broad.

The Eighth Circuit in *Dairy Farmers of America, Inc. v. Travelers Ins. Co.*, held that "a jury's finding of liability without a corresponding award of damages does not invalidate the verdict." 391 F.3d 936, 945 (8th Cir. 2004). Furthermore, the Eighth Circuit quoted with approval in that case, the district court's analysis that an acceptable rationale could be given for the alleged inconsistency. *Id.* ("Contrary to plaintiff's argument, however, there do appear to be acceptable rationales for the jury to deny fees."). "It is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: 'where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.'" *Lockard v. Missouri Pacific Railway Co.*, 894 F.2d 299, 305 (8th Cir. 1990) (quoting *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 396 U.S. 355, 364 (1992)); *See also Dairy Farmers of America, Inc.*, 391 F.3d at 945.

In the case at bar, the jury returned a verdict in favor of Plaintiff Brian Hodak, but awarded no compensatory damages. In light of the Supreme Court's dictate that an attempt be made to harmonize the verdict, "for a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment[,]" *Atlantic & Gulf Stevedores, Inc.*, 369 U.S. at 364, this Court believes that the Jury's verdict must stand. Reading the Jury's verdict so that it is consistent is an easy task in the case at bar. The simple

result is that the Jury believed that Plaintiff Brian Hodak's first amendment rights were violated, but that he personally suffered no compensable damage as a result of this violation.

Furthermore, Defendants' assert that Plaintiffs waived their right to object to any inconsistency in the jury's verdict, by failing to object immediately and seek resubmission of the inconsistent verdict before the jury was discharged. *Lockard*, 894 F.2d at 304 ("[I]f trial counsel fails to object to any asserted inconsistencies and does not move for resubmission of the inconsistent verdict before the jury is discharged, the party's right to seek a new trial is waived."). Plaintiffs are not entitled to a new trial, as there was no inconsistency in the jury's verdict, and even if there were, Plaintiffs failed to raise their objection in a timely manner.

## 2. Nominal Damages

Plaintiffs next argument is that because this case involved a constitutional violation, at the very least Plaintiff Brian Hodak is entitled to nominal damages. In support of this argument they cite *Farrar v. Hobby*, in which the Supreme Court held that "the denial of procedural due process should be actionable for nominal damages without proof of actual injury." 506 U.S. 103, 112 (1992). The parties disagree over whether the Supreme Court's holding in *Farrar* may be generalized to any constitutional violation, or whether it is limited to a due process violation. Before reaching the question of whether nominal damages are appropriate in this case the Court must first address whether Plaintiffs waived their right to a nominal damage instruction because they failed to request such an instruction at the instruction conference.

Federal Rule of Civil Procedure 51(c) specifically states that "[a] party that objects to an instruction or the failure to give an instauration must do so on the record, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51(c)(1). There is no evidence in the record that Plaintiffs requested an instruction on nominal damages. Out of the

presence of the jury, in a discussion between the Court and counsel, the Court stated: "During the period of time when we recessed yesterday until now, we have had several sessions off the record regarding the instructions and the order of the instructions. I propose the following instructions be given." *Trial Tr.,* Vol. VI, p. 3, lines 13-16. The Court then listed the proposed instructions and asked counsel whether they had any additional instructions to proffer, plaintiff offered no additional instructions, Defendants offered one instruction that is not at issue, that was rejected. *Trial Tr.*, Vol. VI, p. 4, lines 17-25, p.5, lines1-8. The Court allowed the parties to review the jury instructions, and to offer any additional instructions, specifically stating "I'm more interested in you all taking plenty of time to look these over and correct them than I am in pressing forward at this time. So relax if you can and take a strong look at those and make sure we have them right. . .." *Trial Tr.*, Vol. VI, p. 3, lines 4-7. No additional objections or comments were made, and the parties proceeded to make closing arguments.

Plaintiffs were given numerous opportunities to request a nominal damage instruction but failed to do so. Plaintiffs failed to make an objection at the time the instructions were given, or after the jury returned its verdict. Although the Court has the authority to allow an instruction to be given that was not timely requested, the Court will not enter a judgment of nominal damages where no jury instruction was ever requested. Plaintiff waived its opportunity to request a nominal damage instruction. Furthermore, the Eighth Circuit has held that "although nominal damages are recoverable. . . a liability verdict does not compel such an award absent a timely request." *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 240 (8th Cir. 2006) (internal citation omitted). No award of nominal damages will be given in this case; Plaintiffs' motion to amend the judgment to reflect nominal damages for Plaintiff Brian Hodak is denied.

### 3. Prejudgment Interest and Interest on the Judgment

Plaintiff requests that the judgment be amended to allow prejudgment interest. The issue to be decided by this Court is whether prejudgment interest is appropriate in a case where the damages were unliquidated prior to judgment. Plaintiffs argue that while there is no controlling precedent on the question, such an award is warranted in this case. Defendants dispute that prejudgment interest is appropriate as there was no ascertainable sum prior to judgment being entered. As an initial matter, the parties disagree over whether Missouri law, or federal law is controlling on this question.

42 U.S.C. § 1988, titled Proceedings in vindication of civil rights, provides that the district court can look to the law of the state in which it sits, when there is no applicable federal law, and when the state law does not clash with the purpose of the federal law. 42 U.S.C. § 1988.[5] This statute mandates a three step process to determine whether to borrow an appropriate state rule. *Burnett v. Grattan*, 468 U.S. 42, 47 (1984).

> First, courts are to look to the laws of the United States so far as such laws are suitable to carry the civil and criminal civil rights statutes into effect. If no suitable federal rule exists, courts undertake the second step by considering application of state common law, as modified and changed by the constitution and statutes of the forum state. A third step asserts the predominance of the federal interest: courts

---

[5]That statutes states in pertinent part:

The jurisdiction. . . conferred on the district courts by the provisions of titles 12, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause. . ..

42 U.S.C. § 1988.

are to apply state law only if it is not inconsistent with the Constitution and laws of the United States.

*Id.* at 47-48. The first question is whether the laws of the United States address the question of prejudgment interest. There are a number of circuit and district court opinions which address this question, however, they do not all reach the same result. *See e.g. Golden State Transit Corp. v. City of Los Angeles*, 773 F.Supp. 204, 209 (C.D. Cal. 1991) ("[F]ederal law gives sufficient guidance to determine whether an award of prejudgment interest is appropriate."); *see contra Strandell v. Jackson County, Ill.*, 634 F.Supp.824, 834 ("there is simply no reason to apply a rule other than the common law tort rule disallowing prejudgment interest on unliquidated claims to § 1983 claims.").[6] However, the Eighth Circuit in *Winter v. Cerro Gordo County Conservation Board*, applied Iowa state law to a determination of prejudgment interest in a § 1983 case. 925 F.2d 1069, 1073 (8th Cir. 1991). However, in reaching this decision the Eighth Circuit did not discuss why state law was applicable. *Id.* ("Winter [plaintiff] is entitled to prejudgment interest pursuant to Iowa Code Ann. § 535.3. . ..").

Although, the Eighth Circuit provided little analysis for its decision that state law should apply to the question of prejudgment interest, this Court is bound by the Eighth Circuit's decision in *Winter*. 925 F.2d at 1073. Therefore the Court will look to Missouri State law to determine whether the Plaintiff is entitled to prejudgment interest. Under Missouri law, "prejudgment interest must be awarded whenever the amount due is liquidated, or although not strictly liquidated, is readily ascertainable by reference to recognized standards." *Hampton Foods Inc. v. Aetna Casualty and Surety Co.*, 787 F.2d 349, 353 (8th Cir. 1986). "Interest is generally not

_____

[6]Still other courts have held that the question of prejudgment interest is one to be decided by the jury. *See e.g. Furtado v. Bishop*, 604 F.2d 80 (1st Cir. 1979) ("We think that the issue of prejudgment interest is closely allied with that of damages, and that a federal rule should, therefore, be developed for an action under 42 U.S.C. § 1983.").

allowed on unliquidated damages because the person liable does not know the amount he owes and thus cannot be in default for not paying." *Herberholt v. DePaul Community Health Center*, 648 S.W.2d 160, 162 (Mo.Ct.App. 1983). The Court concludes that although, the rule allows for the an award of prejudgment interest, even where the damages are unliquidated, the case at bar does not fit within this limited exception as the damages were not readily ascertainable. The question of damages resulting from an unlawful violation of the First Amendment required expert testimony and evidence in order for the Jury to reach a determination. Therefore Plaintiffs' request for prejudgment interest is denied.

Plaintiffs also request an award of post-judgment interest. Plaintiffs assert that under Missouri Revised Statutes § 480.040, they are entitled to post-judgment interest, as of November 16, 2006. Defendant does not respond to Plaintiffs' request for post-judgment interest. The Missouri Revised Statute states:

> [I]n tort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date of judgment is entered by the trial court until full satisfaction. All such judgments and orders for money shall bear a per annum interest rate equal to the intended Federal Funds Rate, as established by the Federal Reserve Board, plus five percent, until full satisfaction is made.

Mo.Rev.Stat. 408.040.2. However, contrary to Plaintiffs assertion that such interest shall accrue from November 16, 2006, the date of judgment is the date of the current order. Under Federal Rule of Civil Procedure 58(a)(1)(B), a separate judgment is not required for the entry of an amended judgment following a motion under Rule 59, however, the time of entry of the judgment is considered the date when the amended judgment is entered is entered on the civil docket. Fed. R. Civ. P. 58(b)(1). Therefore, Plaintiffs are entitled to interest from the date this order is entered on the civil docket, not the date of the jury verdict.

### 4. Liquor License

In addition to the relief requested above, Plaintiffs request that the recision of Karla Hodak's liquor license be expunged. Under Federal Rule of Civil Procedure 54(c) "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed. R. Civ. Pro. 54(c). This Court clearly has the authority to award any relief which is warranted. However, there is no basis for expunging the recision of Karla Hodak's liquor license. As the Defendant correctly states, Karla Hodak is no longer a party to this action, and the judgment that was awarded in this case is effective only as to Plaintiff Brian Hodak and Plaintiff H/N Planning. As Karla Hodak is not a party she is not entitled to relief and therefore the request for the expungement of the recision of Karla Hodak's liquor license is denied.

## IV. MOTION FOR JUDGMENT AS MATTER OF LAW OR NEW TRIAL

### A. LEGAL STANDARD

#### 1. Motion for Judgment as a Matter of Law

Defendants have renewed their Motion for Judgment as a Matter of law, or in the alternative seek a new trial, under Federal Rule of Civil Procedure 50(b).

> If the court does not grant a motion for judgment as a matter of law made under subdivision (a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment. . .. The movant may alternatively request a new trial or join a motion for a new trial under Rule 59.

Fed. R. Civ. P. 50(b). The inquiry on a motion made pursuant to Rule 50 is the same as that for summary judgment. *Kinserlow v. CMI Corp.*, 217 F.3d 1021, 1025 (8th Cir. 2000). The issue is "[w]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* Therefore, a court

must not disturb the jury's verdict unless "no reasonable juror could have found for the non-moving party based on the trial record." *Sanders v. May Dep't Stores Co.*, 315 F.3d 940, 943 (8th Cir. 2003). A Rule 50 motion should be granted where the plaintiff fails to make a submissible case of the required elements of a cause of action. *See Charles Woods Television Corp. v. Capital Cities/ABC, Inc.*, 869 F.2d 1155, 1160-61 (8th Cir. 1989).

When deciding a Rule 50 motion, the court draws all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence. *Kipp v. Missouri Hwy & Transp. Comm'n*, 280 F.3d 893, 896 (8th Cir. 2002); *Kinserlow*, 217 F.3d at 1025. A reasonable inference is one which may be drawn from the evidence without resort to speculation. *Kinserlow*, 217 F.3d at 1026. Accordingly, judgment as a matter of law should be granted if the record contains no proof, beyond speculation, to support the verdict. *Id.* A court should grant a Rule 50 motion "when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party." *Id.* (internal quotations omitted). Importantly, a court must assume that the jury resolved all conflicts of evidence in favor of the non-moving party. *Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003). Moreover, a court must take as true those facts which tended to be proved by the prevailing party. *Id.* In short, a court should deny a Rule 50 motion if "reasonable jurors could differ as to the conclusion that could be drawn from the evidence." *Id.* (internal quotation omitted).

### 2. Motion for New Trial

A motion for a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). "A district court may grant a new trial on the basis that the verdict is against the weight of

evidence, if failing to do so would result in a miscarriage of justice." *Harris v. Secretary, U.S. Dep't of the Army*, 119 F.3d 1313, 1318 (8th Cir. 1997). A new trial is warranted if the court concludes "that the jury quite clearly reached a seriously erroneous result in spite of the clear weight of evidence." *Leichihman v. Pickwick Intern.*, 814 F.2d 1263, 1267 (8th Cir. 1987) (internal quotation omitted). In making this determination, a court can rely on its own reading of the evidence and is permitted to weigh the evidence. *Harris*, 119 F.3d at 1318. The Eighth Circuit has cautioned, however, that a court "may not reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id.* (internal quotations omitted).

## B. DISCUSSION[7]

Defendants' present numerous arguments in support of both their Motion for Judgment as a Matter of Law After the Verdict and their Motion for a New Trial. Defendants first argue that Plaintiffs' evidence was insufficient to submit a § 1983 retaliation claim to the Jury. Both parties argue that the undisputed evidence supports a finding in their favor. Defendants specifically provide a list of reasons why the Plaintiffs' evidence was insufficient to support the claim of retaliation. The Court will address each element of Plaintiffs retaliation claim that is challenged by Defendants.

### 1. Sufficiency of the Evidence to Support Causation Element

The first element challenged is the sufficiency of Plaintiffs' evidence of causation; that Plaintiff Brian Hodak's protected speech resulted in the adverse action. They argue that the evidence is insufficient to support the Jury's finding that Plaintiff Brian Hodak's protected speech

---

[7]For simplicity, the Court will address each argument in the order it is presented in Defendants' motion. Some issues raised by the Defendant apply to both motions, and therefore will be addressed in the context of both.

caused the adverse action of increased police presence, or the revocation of the liquor license. Defendants arguments on this issue are unpersuasive. Defendants themselves state in their memorandum that Plaintiffs' evidence was disputed, and disputed evidence is insufficient to overturn the Jury's findings. Furthermore, all reasonable inferences are to be made in favor of the non-moving party. *Kinserlow*, 217 F.3d at 1026. Plaintiffs provided the testimony of Karla Hodak, as well as Michelle Steins, that supported the finding that Plaintiff Brian Hodak's protected speech was the cause of the revocation of Karla Hodak's liquor license. Furthermore, Plaintiffs' provided testimony that following Plaintiff Brian Hodak's protected speech, there was an increase in police presence surrounding the Bar. Defendants disputed this testimony, and the Jury resolved the discrepancy in favor of Plaintiffs.

Defendants raise a number of arguments that the Court will address in further detail regarding the sufficiency of Plaintiffs' evidence of causation. Defendants assert that there was nothing more than a temporal connection between the protected speech and the alleged retaliatory conduct. *See e.g. Kiel v. Select*, 169 F.3d 1131, 1136 (8th Cir. 1999) ("Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."). However, Plaintiffs presented specific evidence of retaliatory motive. The direct testimony of Karla Hodak that Defendant Brown threatened her regarding her husband's speech clearly supports the Jury's findings. The second argument raised by Defendants is that there was no evidence presented of retaliatory intent by the decision maker, namely the Board of Alderman ("BOA"), rather all evidence related to Defendant Mayor Brown. Although Plaintiffs did not, and could not, present evidence of Defendant Brown's ability to revoke Karla Hodak's liquor license independently, Plaintiffs did present evidence that Defendant Brown had persuasive authority over the BOA. Additionally, Michelle

Steins testified that the decision regarding revocation had been made prior to the revocation hearing. Although there was certainly evidence in support of Defendants position, in making all reasonable inferences in favor of Plaintiffs, the Court finds there is sufficient evidence of causation.

Defendants further argue, that regardless of whether or not the evidence of causation is sufficient, Plaintiffs failed to present evidence sufficient to overcome the Defendants' evidence that the revocation would have occurred regardless of the protected activity. Defendants cite to *McDonnell Douglas*, as the controlling framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, both *McDonnell Douglas*, and *Price Waterhouse v. Hopkins*, provide frameworks for analyzing employment discrimination cases; Defendants have not provided any support for why either of these cases is applicable to the case at bar. As recited by the Court above, in its discussion of Plaintiffs' Motion for a New Trial, this is not an employment discrimination case. The burden shifting approach used in employment discrimination cases is inapplicable. Furthermore, the Jury was clearly instructed that if they believed the decision would have been made regardless of the illegal motive, then they must find in favor of the Defendants. Clearly the Jury did not find that the same action would have taken place had the retaliatory motive not been considered. Defendants request for a new trial, or for judgment as a matter of law is denied on the basis of lack of causation.

### 2. Insufficient Proof of an Adverse Action against Brian Hodak

Defendants argue that the second element of a retaliation claim, suffering of an adverse action sufficient to deter a person of ordinary firmness from continuing to speak, was not satisfied with regards to Plaintiff Brian Hodak. Defendants argue that because the only ascertainable injury

was to Plaintiff H/N Planning, there was no adverse action sufficient to quell Brian Hodak's speech.

The Eighth Circuit case law supports Defendants' argument that Plaintiff Brian Hodak cannot assert a § 1983 claim for damages suffered by Plaintiff H/N Planning.  Although not directly on point, the Eighth Circuit has held that shareholders, even sole shareholders, cannot sue under § 1983 for damages sustained by the corporation.  *Potthoff v. Morin*, 245 F.3d 710, 717 (8th Cir. 2001) ("We hold that the shareholder standing rule applies to civil rights actions brought pursuant to 42 U.S.C. § 1983 by shareholders claiming injury to their corporations.").  Plaintiff Brian Hodak is one step further removed from a shareholder, he was the operator of the Bar; Plaintiff Brian Hodak cannot assert the claims of Plaintiff H/N Planning .[8] Plaintiffs assert the damages sustained by Plaintiff Brian Hodak, are not those of Plaintiff H/N Planning, but are for emotional and mental distress.  The Eighth Circuit in *Naucke*, held that while in some cases embarrassment, humiliation and emotional distress may be sufficient to support a § 1983 claim, "it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."  284 F.3d at 928.  In *Naucke*, the court found that harassing comments, insulting remarks, and unprofessional actions by the City Administrator, were insufficient to deter a person of ordinary firmness from exercising their right of free speech.  *Id.*

The case at bar is slightly confusing, because Plaintiff H/N Planning is asserting damages from the protected action of Plaintiff Brian Hodak.  However, this does not mean that any

---

[8]This was the basis of this Court's original order to allow Plaintiff H/N Planning to be added as a named Plaintiff immediately prior to the conclusion of the first jury trial.  If Plaintiff Brian Hodak was able to assert the damages suffered by Plaintiff H/N Planning, then Plaintiff H/N Planning would have been an unnecessary party.  That order led this Court to grant Defendants' Motion for a New Trial.

damages suffered by one were suffered by the other. The economic damages suffered by Plaintiff H/N Planning cannot be factored into the question of sufficiency of the evidence regarding Plaintiff Brian Hodak. The evidence adduced at trial, is insufficient, as a matter of law, to support a judgment in favor of Plaintiff Brian Hodak. His testimony regarding the emotional impact of the threats of Defendant Brown, and the eventual revocation of Karla Hodak's liquor license are not sufficiently severe so as to raise to the level of an actionable constitutional violation. Even though no damages were awarded, Defendants are entitled to Judgment as a Matter of law on the claim of Brian Hodak for retaliation under § 1983.

### 3. H/N Planning's Retaliation Claim

#### a. H/N Planning's Standing to Sue

Defendants reiterate their previous argument that Plaintiff H/N Planning lacks standing to sue, as there is no evidence H/N Planning exercised any protected activity. This argument was thoroughly addressed by this Court in its order denying Defendants' Motion for Judgment on the Pleadings Against Plaintiff H/N Planning, on Count 1 of the Third Amended Complaint. [doc. #176]. Plaintiff H/N Planning has standing, under an exception to the general rule that a plaintiff may only assert their own rights, not the rights of a third party. Plaintiff H/N Planning has suffered a concrete injury, there is a close relationship between Plaintiff H/N Planning and Plaintiff Brian Hodak, and Plaintiff Brian Hodak cannot protect this interest, as he suffered no damages.[9] These facts are sufficient for Plaintiff H/N Planning to have standing to sue.

---

[9]Generally a litigant may only assert his own legal rights and interests, and "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 498-499 (1975). However, an exception to this prudential limitation exists when the third party meets three additional criteria. "The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficient concrete interest' in the outcome of the issue in dispute; the litigant must have a close relationship to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991).

### b. Revocation of Liquor License Sufficient Adverse Action

Defendants next argument for granting judgment as a matter of law against Plaintiff H/N Planning is that the revocation of Karla Hodak's liquor license was not an adverse action sufficient to support a claim of retaliation. Again, Defendants repeat an argument previously addressed by this Court. Defendants assert that the revocation of the liquor license was not final, because Karla Hodak failed to appeal the decision to the Board of Adjustment within the city, and failed to appeal the adverse ruling to the Missouri State court. The Court notes that Defendants provide no support for their assertion that Karla Hodak could have appealed to the Board of Adjustment. Defendants' second assertion, that Karla Hodak failed to appeal to the Missouri State court, was thoroughly analyzed in our prior order. The fact that a Missouri Constitutional provision allows for appeal to the state court, does not require an individual to take such action. An action is adverse in the context of the First Amendment, if a reasonable person of ordinary firmness would be deterred from continuing to exercise his right to free speech. *Garcia v. City of Trenton*, 348 F.3d 726, 728-729 (8th Cir. 2003). The revocation of Karla Hodak's liquor license, which was the key asset of Plaintiff H/N Planning, and was Plaintiff Brian Hodak's livelihood, was a sufficiently adverse and final decision to support a claim of retaliation.

### c. Jury Instructions

Defendants next argument against Plaintiff H/N Planning is that it was error to instruct the Jury that they could find in favor of Plaintiffs if they believed that retaliation was "a motivating factor" rather than "the motivating factor." Defendants' argument on this point supports both their request for Judgment as a Matter of Law, and their request for a new trial. This raises a new argument, and will be addressed in detail by the Court.

As an initial matter, the Court notes that all the case law cited by Defendants is in the context of employment discrimination. As noted by the Court above, in the employment context, there are two distinct frameworks that may be used, depending on the facts of the case. *See Foster v. University of Arkansas*, 938 F.2d 111, 115 (8th Cir. 1991) (Contrasting a discrimination case involving mixed motives from a pretext case). In that case, the Eighth Circuit upheld the trial court's use of the phrase "the determining factor" in a jury instruction. *Id.* at 116 ("The district court's instruction on pretext accurately reflected the law and ensured that the jury would not confuse the pretext and mixed motive issues."). The Eighth Circuit affirmed the decision in *Foster*, holding that "the plaintiff must prove that the prohibited factor was the determining factor, not merely a determining fact, *in the employment decision*." *Rockwood Bank v. Gaia*, 170 F.3d 833, 842 (8th Cir. 1999) (emphasis added). Plaintiffs refute Defendants contention that either of these cases are controlling, and cite the Court to *Naucke*. 284 F.3d at 928. "It is enough that the defendant's fault was a substantial factor in producing the plaintiff's injuries, and the defendant's fault need not be the sole proximate cause in order to allow recovery." *Id.* (citing *Ricketts v. City of Columbia*, 36 F.3d 775, 779 (8th Cir. 1884)). The Eighth Circuit in *Ricketts*, addressed the question of motivating factors in the context of a due process violation resulting from the unequal response of police to domestic abuse calls verses other abuse calls. 36 F.3d at 779. The court determined that a violation occurs "only if that impact can be traced to a discriminatory purpose." *Id.* (internal citation omitted). The court then looked to Missouri law on proximate cause to conclude that in order to satisfy the causation requirement, only a motivating factor is required. *Id.*

In drafting the jury instructions in the case at bar, this Court determined that the correct approach was that articulated by the Eighth Circuit in *Naucke* and *Ricketts*, the illegal motive need

only be a motivating factor, not *the* motivating factor.  Furthermore, this Court specifically instructed the Jury that if they found that the Board of Alderman would have revoked Karla Hodak's license regardless of Brian Hodak's protected conduct, then they should find for Defendants.  Jury Instruction No. 7 ("Your verdict must be for Defendant Tom Brown and against Plaintiff Brian Hodak if you find that Karla Hodak's liquor license would have been revoked by the City of St. Peters regardless of Plaintiff Brian Hodak's letters to the editor.");  *See e.g. Ricketts*, 36 F.3d at 779 ("Thus the relevant inquiry for determining causation is as follows: 'Would the injury have been avoided had' there not been a municipal custom of treating domestic abuse less seriously than nondomestic abuse?" (citing *Canton v. Harris*, 489 U.S. 378, 391 (1989).)).  The Jury was clearly instructed that the illegal motive must have been a cause of the injury, and if the injury, in this case the revocation of Karla Hodak's liquor license, would have occurred without consideration of the illegal motive, then Defendants must prevail.  The Jury found that the illegal motive caused the injury, therefore Defendants' motion is denied on this basis.

### d.  H/N Planning's Proof of Damages

Defendants last argument regarding the sufficiency of Plaintiff H/N Planning's evidence of retaliation, is that the proof of damages was insufficient to support the award.  Specifically, Defendants argue that the evidence was insufficient to support the conclusion that the Bar's profits would have increased by ten percent in the months of November, 2001 through June, 2002.  Defendants assert that the only evidence provided was of the Bar's gross receipts for the period of June, 2001 through October, 2001, and that extrapolation from this limited time period of lost profits for November, 2001 through trial is not based on sufficient certainty.

Defendants cite to the case of *Coonis v. Rogers*, in which the Missouri Court of Appeals states that "[t]he general rule as to the recovery of anticipated profits of a commercial business is that they are too remote, speculative, and too dependant upon changing circumstances to warrant a judgment for their recovery." 429 S.W.2d 709, 714 (Mo.App. 1968) (internal citations omitted). However, it is important to note the context in which this statement is made; the court, in the same paragraph, states that "[g]enerally, the measure of damages for procuring the *breach of a contract* is the loss either of property or of personal benefit. . .." *Id*. (emphasis added). The case at bar is not a breach of contract case. The damages suffered by Plaintiff H/N Planning as a result of the revocation of Karla Hodak's liquor license cannot be remedied through the usual breach of contract damages. Furthermore, the Eighth Circuit has held that while there must be a reasonable degree of certainty regarding past and future lost profits, "absolute exactitude is not required." *Marvin Lumber and Cedar Co. v. PPG Industries*, Inc., 401 F.3d 901, 914 (8th Cir. 2005). "Instead the plaintiff must prove the reasonable certainty of future damages by a fair preponderance of the evidence." *Id.*

Although the evidence of future damages presented by Plaintiffs was not abundant, it was sufficient to support the Jury's award. Plaintiffs clearly presented evidence that had Defendants not acted illegally in revoking Karla Hodak's liquor license, the Bar would have continued in operation. A bar cannot operate without a liquor license. Furthermore, Plaintiffs provided evidence of the gross receipts for the months prior to the increased police presence, and provided testimony of the percentage of the gross receipts for that year which would constitute profit. As the Eighth Circuit stated in *Marvin Lumber*, Defendants had the opportunity, and indeed took the opportunity, to cross-examine all of the Plaintiffs' witnesses, and the Jury had the opportunity to reject or accept the evidence of damages. 401 F.3d at 915.

All of the arguments presented above are insufficient to set aside the Jury's verdict against Defendants in favor of Plaintiff H/N Planning. Plaintiffs presented evidence on each element of their claim of retaliation in violation of the First Amendment, and the Jury was entitled to believe that evidence. The evidence presented was not insufficient as a matter of law, and therefore Defendants' Motion for Judgment as a Matter of Law against Plaintiff H/N Planning is denied.

### 4. Punitive Damages

The possibility of punitive damages was discussed prior to the first trial on this matter, and was again raised briefly during the second trial. Plaintiffs did not request a punitive damage instruction during the instruction conference following the close of evidence of the second trial. While the Jury was deliberating over the question of liability, Plaintiffs' counsel requested that the question of punitive damages be submitted to the Jury. This Court granted Plaintiffs' request to submit a punitive damage instruction to the Jury in a bifurcated proceeding, conditioned on a jury finding in Plaintiffs favor on the question of liability and compensatory damages.[10] In the second stage of the bifurcated proceeding, the Jury found in favor of Plaintiff H/N Planning on the question of punitive damages, and awarded $1,000,000.00 to the Plaintiffs. Defendants raise a number of objections to both the punitive damage instruction, as well as the amount of the punitive damage award. Again, the Court will address each argument in the order presented in Defendants' brief.

### a. H/N Waived its Claim to Punitive Damages

Defendants first argument is that Plaintiff H/N Planning waived their right to submit a punitive damage instruction, because Plaintiff H/N Planning failed to propose the instruction at

---

[10]The Court also notes that had the Court failed to allow an instruction on punitive damages, and it was later determined one was required, a new jury would have had to be seated, and the evidence presented a second time.

the instruction conference, prior to closing arguments being made, and the instructions being read

to the Jury.  Plaintiffs assert that the issue of punitive damages was a separate phase of the trial,

and instructions on punitive damages did not have to be raised during the jury instruction

conference on the first phase.  Although the question of punitive damages was not discussed

during the initial jury instruction conference, the issue had been raised earlier in the proceedings.

Defendants had moved for Judgment as a Matter of Law at the close of all the evidence, including

judgment on the issue of punitive damages.  This Court withheld ruling on that issue at that time.

Defendants further stated, before this Court, that they did not object to the jury instructions,

because they assumed, that the lack of instruction on punitive damages was indicative of this

Court's decision not to allow a finding on punitive damages.  No such determination had been

made by this Court.

Federal Rule of Civil Procedure 51 provides the basic guidelines on jury instructions.  The

first relevant section is 51(a)(1), which states: "A party may, at the close of all the evidence or at

an earlier reasonable time that the court directs, file and furnish to every other party written

requests that the court instruct the jury on the law as set forth in the requests."  Fed. R. Civ. P.

51(a)(1).  Furthermore, "[a]fter the close of the evidence, a party may: . . . (B) with the court's

permission file untimely requests for instructions on any issue."  Fed. R. Civ. P. 51(a)(2)(B).

Defendants assert that under Rule 51(c), Plaintiffs failure to object to the lack of a punitive

damage instruction, waived that right.  However, in order for Rule 51(c) to be applicable, the

district court must have already denied a request for an instruction or have agreed to give a

specific instruction.  Fed. R. Civ. P. 51(c).[11]

---

[11]In its entirety, Rule 51(c) states:

(1) A party who objects to an instruction or failure to give an instruction must do

Even assuming that Plaintiffs' request for a punitive damage instruction was untimely, under the terms of Rule 51(a)(1), it is within the discretion of the district court to allow a party to file untimely requests. Fed. R. Civ. P. 51(a)(1) & (1)(2)(B). There was clearly no waiver by the Plaintiff of an objection to a given instruction, or the failure to give a specific instruction, as no request for a punitive damage instruction was made at the initial jury instruction conference. As Defendants state in their brief "no instruction on punitive damages was included within the initial jury instructions prepared." *Defs. Memo. in Support of Defs. Mot. for Judg. as a Matter of Law after Trial*, p. 34. Therefore, the Court concludes that Plaintiffs did not waive their right to an instruction on punitive damages. The Federal Rules clearly contemplate that an instruction may be given, even if requested in an untimely manner, at the discretion of the trial court. Fed. R. Civ. P. 51(a)(2)(B). If Rule 51(c) was intended to encompass the failure to request an instruction in a timely manner on the record then Rule 51(a)(2)(B) would be superfluous.

There are two additional reasons for denying Defendants motion on this basis. First, it is within the discretion of the trial court to allow a jury instruction that was untimely filed, therefore this Court may permit such an instruction if it would be prudent to do so. Secondly, the Court treated the punitive damage question as the second phase of the trial. Therefore, it was unnecessary to address the punitive damage instruction during the first phase.

---

so on the record, stating distinctly the matter objected to and the grounds of the objection. (2) An objection is timely if: (A) a party that has been informed of an instruction or action on a request before the jury is instructed and before final jury arguments, as provided by Rule 51(b)(1), objects at the opportunity for objection required by Rule 51(b)(2); or (B) a party that has not been informed of an instruction or action on a request before the time for objection provided under Rule 51(b)(2) objects promptly after learning that the instruction or request will be, or has been, given or refused."

Fed. R. Civ. P. 51(c).

### b. The Punitive Damage Instruction was Supported by Evidence

Defendants also argue that the punitive damage instruction was improper because it was

not supported by the evidence at trial. Instruction 19 stated, in part:

> Before you may consider awarding punitive damages, you must decide whether
> Defendant Tom Brown acted with malice or reckless indifference to Plaintiff Brian
> Hodak's First Amendment right. Defendant Tom Brown acted with malice or
> reckless indifference if:
>> it has been proved by the greater weight of the evidence that
>> Defendant Tom Brown knew that revocation of Karla Hodak's
>> liquor license was in violation of the First Amendment right to free
>> speech of Plaintiff Brian Hodak or that Defendant Tom Brown
>> acted with reckless disregard of that law.
> However, you may not award punitive damages if it has been proved by the greater
> weight of the evidence that Defendant Tom Brown made a good-faith effort to
> comply with the law.

Jury Instruction No. 19. The Jury awarded punitive damages, so they necessarily decided

Defendant Tom Brown acted with malice or reckless indifference.[12]

If the jury was improperly instructed a new trial may be warranted, or judgment as a

matter of law may be granted in Defendants favor. *Swipies v. Kofka*, 419 F.3d 709, 716 (8th Cir.

2005) ("If a district court improperly instructs a jury, a new trial may be appropriate."); *see also*

*Kinserlow*, 217 F.3d at 1025 (8th Cir. 2000) (The issue is "[w]hether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law."). "Punitive damages may be assessed in a § 1983 case when a

'defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

reckless or callous indifference to the federally protected rights of others.'" *Swipies*, 419 F.3d at

---

[12]Defendants also argue that because Defendant Brown was not the ultimate decision maker on the question of revocation, he cannot be held responsible for the Board of Alderman's decision. This is clearly not the law. *Naucke* is directly on point and states that "the jury could reasonably have concluded that Link [defendant] improperly influenced the decision-making process, and was able to make good on his threat to have [plaintiffs] terminated. 284 F.3d at 929.

717-718 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  *Swipies* further states that "to prove

reckless indifference, requires evidence that the defendant acted 'in the face of a perceived risk

that [his or her] actions [would] violate federal law.'" *Swipies*, 419 F.3d at 718 (quoting *Kolstad

v. American Dental Ass'n*, 527 U.S. 526, 536 (1999)) (alterations in original).  This standard does

not require a finding of actual intent to injure or evil motive.  *Savarese v. Agriss*, 883 F.2d 1194,

1204 (3rd Cir. 1989) ("The Supreme Court. . . specifically rejected the proposed actual intent

standard . . ..").

Defendants first argument, that Plaintiff H/N Planning abandoned its claim of damages

based on revocation, is easily disposed.  Plaintiffs presented evidence that Plaintiff H/N Planning

suffered damages as a result of both the increased police presence and the revocation of Karla

Hodak's liquor license.  The fact that the bar could not continue to operate was due to the

revocation of the liquor license, not solely the increased police presence.  Furthermore, even if the

entire damage award was based on the increased police presence, the evidence presented could

have supported a determination by the Jury that Defendant Brown was responsible for the

increased police presence, and that he acted with sufficient intent to injure to support a punitive

damage award.

Defendants remaining arguments attack the sufficiency of the evidence to support a

punitive damage award.  The Supreme Court held in *Smith v. Wade*, that "a jury may be permitted

to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to

be motivated by an evil motive or intent, *or* when it involves reckless or callous indifference to the

federally protected rights of others."  461 U.S. at 56 (emphasis added).  The Supreme Court

further held that "this threshold applies even when the underlying standard of liability for

compensatory damages is one of recklessness."  *Id.*

Punitive damages are intended to redress the concrete loss that plaintiff suffered by reason of defendant's wrongful conduct. *State Farm v. Campbell*, 538 U.S. 408, 416 (2003). Punitive damages are aimed at deterrence and retribution. There are procedural and substantive constitutional limitations on punitive damages awards. The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. That Due Process Clause imposes limits on broad discretion of imposition of punitive damages. A grossly excessive punitive award furthers no legitimate purpose and constitutes an arbitrary deprivation of property. *Id.* at 417. "In light of these concerns, in *Gore, supra,* we instructed courts reviewing punitive damages to consider these guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 418 (citing *BMW of North America v. Gore*, 517 U.S. 559 (1996)). The Gore factors were actually incorporated in the jury instructions submitted to the Jury which awarded punitive damages in the present case.[13]

---

[13] If you decide to award punitive damages, you should consider the evidence already adduced and the following in determining the amount of the punitive damages to award:

> the nature of Defendant Tom Brown's conduct under the totality of the circumstances; the frequency of Defendant Tom Brown's conduct; how reprehensible the Defendant Tom Brown's conduct was toward Plaintiff H/N Planning & Control, Inc.; what amount of punitive damages, in addition to the compensatory damages already awarded, is needed, to punish Defendant Tom Brown for his wrongful conduct toward Plaintiff H/N Planning & Control, Inc. and to deter Defendant Tom Brown and others from similar wrongful conduct in the future; the amount of fines and civil penalties applicable to similar conduct; and whether the amount of punitive damages bears a reasonable relationship to the compensatory damages awarded.

The parties were given an opportunity to present more evidence in the bifurcated second stage of

The Supreme Court in *State Farm,* noted*:*

"[T]he most important indicium of the reasonableness of the punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore,* 519 U.S., at 575, 116 S. Ct. 1589. We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard to the health and safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm*, 538 U.S. 416. Karla Hodak is the sole shareholder of H/N Planing and was the possessor of the liquor license which permitted her to sell liquor at C. Blake's Bar and Grill. Ms. Hodak testified as follows:

Q. Okay. After the October 18th incident[14] with Fitchett, did you receive a visit from the Defendant, Tom Brown, the Mayor at the time, at C. Blake' itself?
A. Yes, I did.
Q. Did Mr. Brown make any statements to you that you took to be a threat regarding your liquor license?
A. Yes. He came in a couple weeks after the incident, two or three weeks, and he came in the bar and asked if I had a minute or he needed to talk to me, and he told me that there's people in St. Peters, including him, that don't like what my husband Brian has been saying.
A. Okay. And did he - - do you recall him using the phrase, "We in the City of St. Peters know how to stick together/"
A. Yes.
Q. Did he in any way suggest or imply to you that Brian needs to quit criticizing people or your liquor license is in danger?
A. Yes. It was something about he's alienating us boys and it's going to cost you your liquor license.

(Trial Tr. Vol.II p. 134 l. 18-p. 135 l. 11). Later, Ms. Hodak offered further testimony:

Q. Okay. After that event, do you ever receive a phone call threat from an individual Defendant in this case, Mayor Tom Brown, regarding Brian's publications in the paper and a threat against your liquor license?

_____

the trial.

[14] This was an altercation at the Bar where Brian Fitchett, a customer, smashed a beer bottle into a mirror.

A. Yes I did.

Q. When was that?

A. February 7th of 2002.

Q. Okay. And what - - how did that come about? What happened?

A. I was at work and Peggy Geldien, his daughter, called me and started the conversation out, "What is he doing, or why is he doing that?" And I'm like, "Who's doing what?" I was like clueless. My husband writes a lot, and he writes a lot of letters. I had no idea what she was talking about, and she said, "The BP Amoco article," and I said, "I don't even think I've read it," and she made a comment, you know, "He knows better than to mess with my father," and I think she said something else, and I just hung up. (Trial Tr. vol.II p. 135 l. 22-p.136 l. 15).

Ms. Hodak then testified:

A. About a minute later the phone rings again, and I answer it, and it's Tom Brown.

Q. How do you know it's Tom Brown?

A. He said, "This is Tom Brown," and I know his voice. I've known him for years.

Q. Okay. You have heard him talk before, so you're familiar with his voice.?

A. Oh, yes.

Q. Okay. And what did he tell you on the phone?

A. The statements that really are in my memory - - it was, "Tell your fucking husband to shut up or you're going to lose your fucking liquor license."

(Trial Tr. vol.II p. 136 l. 17-p. 137 l. 3).

Our Forefathers recognized that power, while necessary in the orderly operation of government, carries with it opportunities for abuse. They carefully fashioned our Constitution to perpetuate the functioning of government, under necessary constraints, to arrest abuse of governmental power, by specifically dividing power among three equal branches. Those branches stand ever rightfully scrutinized by what might be considered as an adopted fourth branch, the press, which those wise Forefathers protected in the First Amendment of the Constitution. No better example of the need for these carefully orchestrated protections to individual liberty can be illustrated than by the facts of this case. A man had messages he had every right to publish, and

because of expressing those views, abused governmental authority was the response, which caused retributive harm.

Applying the *Gore* factors, the harm caused was economic, not physical. The tortious conduct evinced no indifference to or a reckless disregard of the health or safety of others, just the right to freedom of speech, the repeated protection of which has been preserved by the countless lives of our best citizens placed with notice upon the alter of freedom. The conduct of Mayor Brown targeted the financial vulnerability of H/N Planning. He threatened to take away the liquor license of Ms. Hodak, and executed that threat, destroying the viability of that business. The business was not only vulnerable to governmental action, but dependent upon the government to retain the valid liquor license. The conduct of Mayor Brown involved repeated actions, as noted above. Finally, the conduct of Mayor Brown was the result of intentional malice. The Jury award of punitive damages in this case is firmly based in fact and supported by law.

### 5. Remittitur

Defendants submit that both the compensatory damage award, and the punitive damage award should be subject to remittitur. However, the Court finds that the evidence supports the Jury awards. It is clear that the evidence showed lost profits for the months of November and December, 2001, the Bar suffered $13,995.97 in lost profits. Plaintiffs then provided evidence of the projected sales for subsequent years, the annual gross receipts, and the amount of the gross receipts which constitute profit. Based on this evidence, the Jury awarded $375,000.00 in compensatory damages. Defendants' request the damages be reduced to zero, or alternatively $13,955.97. The Jury also awarded $1,000,000.00 in punitive damages, which Defendants argue is an unreasonable multiple of $13,955.97.

In determining whether the Jury's damage award is excessive, and should be subject to remittitur, the court must look to the law of the forum state. *Taylor v. Otter Tail Corp.*, 2007 WL 1052459, *2 (8th Cir. April 10, 2007) ("We are guided by the law of the forum state in weighing the excessiveness of a verdict.").  The Eighth Circuit in *Thorne v. Welk Inv., Inc.*, held that "[a] verdict is not excessive unless the result is monstrous or shocking."  197 F.3d 1205, 1211 (8th Cir. 1999) (applying Missouri state law).  The Court does not believe that $375,000.00 in lost profits, for a four year period, is monstrous or shocking.  The revocation of Karla Hodak's liquor license resulted in the closing of the Bar, which was the sole asset of Plaintiff H/N Planning. The evidence presented allowed the Jury to extrapolate what the bar would have earned but for Defendants' actions.  The amount awarded was within the amount testified to by Plaintiffs. Defendants request for remittitur as to compensatory damages is denied.

As the amount of compensatory damages is reasonable, Defendants' argument that the punitive damage award is an unreasonable multiple is inapposite.  Based on the evidence in the case, and the comparison between the compensatory damages and punitive damages, the Court finds that both judgments are in all respects reasonable, and must stand.  Therefore Defendants' request for remittitur is denied.

### 6.  Plaintiffs' Closing Arguments

Next, Defendants object to Plaintiffs closing argument that Defendants retention of an expert witness on the subject of damages is subject to an inference of admission of liability. Defendants assert that such an argument by Plaintiffs' was prejudicial, and was not supported by the evidence.  Specifically, Defendants argue that there can be no permissible inference of liability based on the retention of a damage expert, and allowing such an argument would force defendants to chose between admitting liability and rebutting a plaintiff's claim of damages.

Plaintiffs' respond, that the closing arguments of counsel were not impermissible, but rather Plaintiffs are permitted to comment on the motives of witnesses for testifying, and the trial strategy of the opposing party. Plaintiffs' counsel stated during closing: "If you're not worried or concerned that you're not liable, why did you hire an expert that you paid $15,000.00 to to [sic] do nothing but talk about damages. They can't have to pay out damages if they're not liable." Tr. Transcript, Vol. VI, p. 81, line 22-25.

Defendants cite to the Supreme Court decision in *Minneapolis, St. Paul & Sault Sainte Marie Railway Co. v. Moquin*, for the proposition that "no verdict can be permitted to stand which is found to be in any degree the result of appeals to passion and prejudice." 283 U.S. 520, 521 (1931). However, this general statement of the law is insufficient to support a finding in Defendants favor. Closing arguments are intended to help the jury interpret the evidence that has been presented to them. *See e.g. U.S. v. Beckman*, 222 F.3d 512, 527 (8th Cir. 2000) ("[A]n attorney's role is to assist the jury in analyzing, evaluating, and applying the evidence."). Furthermore, the district court is given considerable discretion in determining the contents of closing arguments. *See e.g. Boardman v. National Medical Enterprises*, 106 F.3d 840, 844 (8th Cir. 1997).

Plaintiffs' argument is not sufficiently prejudicial to support an order for a new trial. Following Plaintiffs challenged statement, Plaintiffs' counsel stated "[t]hat's why you're here. That's why you have the common sense that you bring to these cases. All we're asking for you to do is simply apply it when you start your deliberations." Tr. Transcript, Vol. VI, p.82, lines 3-6. The Jury is able to determine that although Defendants presented expert testimony regarding damages, they also provided testimony supporting no liability. The jury verdict was not the result of appeals to "passion and prejudice" but rather counsel appealed to the Jury's common sense,

which is clearly permissible.  *Minneapolis, St. Paul & Sault Sainte Marie Railway Co.*, 283 U.S. at 521.  Furthermore, the Court notes that Defendants did not object to the contents of Plaintiffs' closing argument at the time that it was made.  Defendants' motion for a new trial on this basis is denied.

### 7.  Testimony of Michelle Steins

Defendants' last argument relates to the reading of prior testimony into evidence. Michelle Steins was called as a witness in the first trial of this matter.  During the second trial, Ms. Steins was unable to be located, and therefore Plaintiffs were permitted to read the relevant portions of her earlier testimony into the record.  Defendants argue that under Rule 32(a)(3)(D) Plaintiffs were required to subpoena Ms. Steins, and that no such subpoena was ever issued. Therefore, Defendants contend, it was improper to allow the prior trial testimony to be read into evidence.  Defendants further assert that the reading of testimony was prejudicial, as when Ms. Steins was located and brought to the Court, she was hostile to both Defendants and the Court. Ms. Steins was subpoenaed into Court at the request of Defendants' counsel.

The Court notes that during the trial Ms. Steins counsel was present and represented to the Court that Ms. Steins could not be located.  Furthermore, as correctly stated by Plaintiffs, Ms. Steins deposition testimony, and prior trial testimony was available to both parties.  Although Rule 32(a)(3)(C) contemplates the use of a subpoena before the admission of deposition testimony may be read into the record, there was no evidence before the Court that Plaintiffs knew of the location of Ms. Steins.  Furthermore, the Court finds that the reading of the Ms. Steins prior testimony was not prejudicial to Defendants.  The testimony was presented live in Court in the first trial on this matter, at which time Defendants had the opportunity to cross examine Ms. Steins.  Therefore Defendants Motion for a New Trial on this ground is denied.

## V.  CONCLUSION

The Court has carefully considered the arguments of both Plaintiffs and Defendants presented in their respective motions and concludes that a new trial is not warranted in this matter.  The Court also finds that with regards to Plaintiff Brian Hodak, nominal damages are not appropriate as they were not requested by Plaintiffs, and furthermore that the evidence presented by Plaintiffs was insufficient to support the Jury's finding in Plaintiff Brian Hodak's favor.  Therefore, Defendants are entitled to Judgment as a Matter of Law on the claim of Plaintiff Brian Hodak against Defendants for violation of his First Amendment rights.  The Court finds that the evidence presented by Plaintiffs was sufficient to support both the compensatory and punitive damage awards.  Therefore Defendants' motion for a new trial or remittitur is denied. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for New Trial and to Alter or Amend the Judgment [doc. #213] is **GRANTED in part and DENIED in part.**  It is **GRANTED** as to Plaintiffs' request for Post-Judgment Interest.  It is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion for Judgment as a Matter of Law After Trial or in the Alternative a New Trial [doc. #216] is **GRANTED in part and DENIED in part.** It is **GRANTED** as to Plaintiff Brian Hodak's First Amendment Claim under Count I of Plaintiffs' Third Amended Complaint. Defendants Motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to File a Fourth Amended Complaint [doc. #228] is **DENIED.**

Dated this <u>14th</u> Day of May, 2007.


_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE